WESTERN STATES INSURANCE COMPANY, Plaintiff and Counterdefendant-Appellee, v. LUCAS D. WELLER *et al.*, Defendants (Mary A. Marshall, Defendant and Counterplaintiff-Appellant).

Fourth District   No. 4—98—0243

Argued August 18, 1998.—Opinion filed September 30, 1998.

Mark S. Atterberry (argued), of Holley Law Office, of Springfield, for appellant.

Barbara B. Collins (argued), of Springfield, for appellee.

JUSTICE COOK delivered the opinion of the court:

Mary A. Marshall appeals a March 25, 1998, declaratory judgment order finding there was no coverage under an automobile liability policy because the insured had violated the policy's cooperation clause. We vacate that order because the trial court entered a final order of declaratory judgment on July 24, 1996, and the subsequent order was of no effect.

On August 16, 1993, Marshall was the driver of a vehicle that was involved in an automobile accident in Gillespie, Illinois. The driver of the other vehicle was Lucas D. Weller, 18 years old, who was driving a vehicle owned by Catherine S. Dillard and insured by Western States Insurance Company. The accident was investigated by the Gillespie police department. According to the police accident report, southbound traffic on Francis Street, the direction Weller was traveling, was required by a traffic sign to yield to westbound traffic on Oak Street, the direction Marshall was traveling. Neither driver was ticketed. According to Marshall, Weller was driving a manual transmission vehicle despite the fact that he had a cast on one leg.

On November 29, 1994, Marshall filed a personal injury action suit against Weller and Dillard (case No. 94—L—65). The count against Dillard alleged that Weller was acting as Dillard's agent at the time of the accident. Western States retained attorney Randall Mead to represent Weller and Dillard in that case.

On January 5, 1996, Western States filed this complaint for declaratory judgment (case No. 96—MR—1), alleging that Weller had breached the cooperation clause of the insurance policy it had issued to Dillard and seeking an order that it not be required to provide him with a defense or pay any claim on his behalf. In an affidavit, dated October 8, 1997, attorney Mead stated that Marshall had served interrogatories on him, that he sent those interrogatories on to Weller on March 9, 1995, but that Weller did not respond to that letter or to follow-up letters on March 30, 1995, July 21, 1995, October 12, 1995, or October 27, 1995. Mead stated that he had not had any contact with Weller "since I filed the Answer on his behalf" in case No. 94—L—65. Mead's secretary, Dawn Boyer, filed an affidavit in which she stated that she "spoke by telephone with Mr. Weller's residence at least six times, over the course of several months." On several occasions she spoke with Weller's mother, who told her that Weller was an over-the-road trucker and was not home. Boyer believes the mother told her that when Weller was not on the road he lived with his parents in Gillespie. She believes she spoke to other family members, including Weller's father, but "because of the passage of time, it is difficult to remember precisely."

A private process server was unsuccessful in serving the complaint for declaratory judgment on Weller. On May 13, 1996, the court authorized service by publication, and Weller was served in that manner. Marshall and Dillard were named in the complaint, for notice purposes only, and filed answers. On July 24, 1996, the court entered a "Default Judgment Order" stating that Western States was relieved of any further obligation to provide coverage or a defense to Weller, or to make any payment on Weller's behalf to Marshall or any other person.

On October 28, 1996, Mead moved to withdraw as counsel for Weller in cause No. 94—L—65. That motion was granted on November 21, 1996, in a docket entry which stated that notice was given Weller in care of his employer, Honda of Illinois, 3101 Danson Avenue, Springfield, Illinois, and that Weller's current address was 2104 South Holmes, Springfield, Illinois, 62704.

On January 2, 1997, the trial court entered summary judgment in favor of Dillard in cause No. 94—L—65. On April 2, 1997, after a bench trial at which Weller failed to appear, the court entered judgment in favor of Marshall and against Weller in the amount of $62,500. Thereafter, on May 16, 1997, Marshall moved to amend her answer in the declaratory judgment action and to file a counterclaim for declaratory judgment against Western States. Over Western States' objection, the motion was granted, the court stating:

> "The Complaint for Declaratory Judgment did not allege that plaintiff [Western States] was prejudiced in a substantial manner by reason of the breach. Nor did the default judgment entered by the court in this cause find or declare that defendant's breach of the insurance contract prejudiced plaintiff in a substantial way. Since the declaratory judgment action did not address the essential issue of prejudice as required by the law applicable in this State, Defendant Marshall must be given the opportunity to litigate that question."

The court once again entered summary judgment in favor of Western States in the declaratory judgment action, on March 25, 1998, stating among other things that Mead was diligent and had acted in good faith in his efforts to secure the cooperation of Weller, that Mead was not required to take "extraordinary measures" to secure the cooperation of his client, that Western States was substantially and materially prejudiced and could not even evaluate the case accurately without Weller's information and input, and that once opposing counsel knew that Mead could not obtain the cooperation of his client to answer interrogatories, Mead was "at a psychological disadvantage from that point forward." Marshall seeks to appeal from the order of March 25, 1998.

■ When an insurer questions whether an insured's claim falls within the scope of coverage, the insurer essentially has two options: (1) secure a declaratory judgment as to its rights and obligations before or pending trial or (2) defend the insured under a reservation of rights. *State Farm Fire & Casualty Co. v. Martin*, 296 Ill. App. 3d 466, 469-70, 694 N.E.2d 1058, 1061 (1998). Similar rules apply when the insurer raises the defense that the insured has breached a condition of the policy. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 292 Ill. App. 3d 1036, 1049-50, 687 N.E.2d 82, 91-92 (1997) (insurer might not be estopped by its failure to defend, however, when insured has breached a policy condition such as by failing to give timely notice). An insurer may not raise a policy defense when it has defended and lost the underlying claim without a reservation of rights. *Nationwide Mutual Insurance Co. v. Filos*, 285 Ill. App. 3d 528, 534-35, 673 N.E.2d 1099, 1104 (1996); see also 7A Am. Jur. 2d *Automobile Insurance* § 403 (1997) (discovery of noncooperation during trial). It would be unfair to the insured to allow the insurer to defend the underlying claim while at the same time it is formulating policy defenses to deny coverage. *Nationwide*, 285 Ill. App. 3d at 534-35, 73 N.E.2d at 1104. It would also waste the time of the courts and the litigants to go through a trial expected to be dispositive only then to discover the insurer is claiming a second bite at the apple in the form of a policy defense.

It is appropriate for an insurer to file a declaratory judgment action alleging that its insured has violated the cooperation clause of an automobile liability policy. *M.F.A. Mutual Insurance Co. v. Cheek*, 66 Ill. 2d 492, 495, 363 N.E.2d 809, 811 (1977). The plaintiffs in the underlying tort action are necessary parties to that declaratory judgment action. *M.F.A.*, 66 Ill. 2d at 495, 363 N.E.2d at 811; *Williams v. Madison County Mutual Automobile Insurance Co.*, 40 Ill. 2d 404, 407, 240 N.E.2d 602, 604 (1968) (where plaintiffs were erroneously dismissed, at their request, from declaratory judgment action, they were bound by it).

■ The preliminary question that we must resolve in this case is whether the July 24, 1996, 'Default Judgment Order'' in this case was a final judgment. In general, a trial court loses jurisdiction to vacate or modify its judgment 30 days after the entry of a final judgment. *Beck v. Stepp*, 144 Ill. 2d 232, 238, 579 N.E.2d 824, 827 (1991). A judgment is final if it determines the litigation on the merits so that the only step remaining is proceeding with the execution of the judgment. *Catlett v. Novak*, 116 Ill. 2d 63, 68, 506 N.E.2d 586, 588-89 (1987).

■ The argument that the "Default Judgment Order" was only a

finding of default and that the court anticipated entering a further order must be rejected. See 735 ILCS 5/2—1206 (West 1996). That was the situation in *M.F.A.*, where the orders "were simple default orders which did not purport to declare the rights of the parties nor to constitute final judgments." *M.F.A.*, 66 Ill. 2d at 502, 363 N.E.2d at 814 (Underwood, J., specially concurring). Here the "Default Judgment Order" stated that Western States was relieved of any further obligation to provide coverage or a defense to Weller, or to make any payment on Weller's behalf to Marshall or any other person. In some cases the declaratory judgment may state only that the insurer is not required to defend the insured, leaving open the question whether there is a duty to indemnify. That is not the case here. In some cases the declaratory judgment may purport to bind only the named insured, without affecting the rights of the claimant. That is not the case here. In some cases it may be improper to file a declaratory judgment action prior to the resolution of the underlying tort case. *State Farm Fire & Casualty Co. v. Leverton*, 289 Ill. App. 3d 855, 856, 683 N.E.2d 476, 478 (1997) (declaratory judgment action would decide ultimate facts upon which recovery is predicated in the tort case). That again is not the case here. In some cases it may be possible to enter an order against one defendant without entering that order against another defendant, for example, where the order is that defendant pay money. In this case where the order is that Western States is not required to make any payments on Weller's behalf to Marshall, it is not possible to rule against Weller in one order, but rule in favor of Marshall in a later order. The only question here is whether the July 24, 1996, order was intended to be a final resolution of this dispute, and it is clear that it was.

The question may be asked whether the hearing at which the default judgment was entered, conducted July 26, 1996, was an adequate forum in which Marshall could raise her objections. When damages are to be assessed after a default has been entered, a hearing must be conducted on the issue of damages if the damages are not liquidated. 735 ILCS 5/2—1206(a) (West 1996); *Elfman v. Evanston Bus Co.*, 27 Ill. 2d 609, 614, 190 N.E.2d 348, 351 (1963) ("Although defaulted, where the action is in tort or for an unliquidated claim or amount, a defendant nonetheless has the right to be heard on the matter of damages"). This was not a claim for damages. This was a claim for declaratory relief, more like a claim for unliquidated damages than a claim for damages. There was no requirement, when no opposition was presented to the entry of the default judgment, that the court conduct a hearing on damages. It is true that Mead's October 8, 1997, affidavit was not presented to the court at the time the default

judgment was entered. It appears that an affidavit could have been presented, however, if any objection to the entry of the order had been raised. The relief sought was spelled out in the motion for default judgment. Western States gave notice to Marshall that it would seek the entry of the default judgment and attached a copy of the order eventually entered to that notice.

Marshall argues that she was a defendant for notice purposes only, and she accordingly had no right to object to the default judgment. We reject that argument. On May 16, 1997, Marshall moved to amend her answer in the declaratory judgment action and to file a counterclaim for declaratory judgment against Western States. There is no reason Marshall could not have done that in July 1996; there is no reason Marshall could not have taken an active role in the litigation if she felt her interests were not being protected.

Marshall argues that the July 24, 1996, "Default Judgment Order" violates due process and is void because service by publication on Weller was not reasonably calculated to give notice. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15, 94 L. Ed. 865, 873, 70 S. Ct. 652, 657 (1950). Marshall had the opportunity to make that argument at the time the "Default Judgment Order" was entered, however, and failed to do so. Marshall has accordingly waived that argument. Marshall was certainly afforded due process, and it is unclear what right she has to complain that Weller's rights were violated.

Finally, the trial court's stated reasons for reconsidering the matter are not sufficient. After 30 days have passed a court is without jurisdiction to vacate or modify its final judgment, even if on further consideration it believes that judgment was erroneous. *Beck*, 144 Ill. 2d at 238, 579 N.E.2d at 827. Marshall could have appealed the "Default Judgment Order" within 30 days of July 24, 1996. She has no right to appeal the March 25, 1998, order, which attempted to modify, or perhaps readopt, the July 24, 1996, order.

The trial court's order of March 25, 1998, is vacated. The trial court's order of July 24, 1996, stands.

Vacated.

GARMAN, P.J., and STEIGMANN, J., concur.